STAUFFER CONSTRUCTION COMPANY, INC. *v.*
BOARD OF EDUCATION OF MONTGOMERY COUNTY

[No. 1311, September Term, 1982.]

*Decided May 10, 1983.*

The cause was argued before LOWE, WILNER and ALPERT, JJ.

*Francis J. Pelland,* with whom were *Sadur & Pelland, Chartered* on the brief, for appellant.

*Roger W. Titus,* with whom were *Titus & Glasgow* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

On September 20, 1976, the parties entered into a construction contract under which appellant was to do certain rehabilitation and renovation work at the Bethesda-Chevy Chase High School complex. They are now embroiled in a dispute over that contract, which appellant sought to have arbitrated. Upon motion of appellee, however, the Circuit Court for Montgomery County stayed the arbitration proceeding, concluding, on summary judgment, that appellant had waived its right to arbitration by failing to present its claims to the architect in a proper and timely fashion.

We are asked in this appeal whether:

> (1) The court had the authority to make that determination;
> (2) It should, in any event, have made it upon summary judgment; and
> (3) By failing to print a proper appendix or record extract, appellant has forfeited its right to appeal the circuit court judgment.

The first two questions are obviously related, and we shall consider them together. But we shall turn our attention initially to the third issue.

### Motion To Dismiss

This is appellant's third attempt to perfect an appeal in this case,[1] and once again it is faced with a motion to dis-

---

1. Appellant's first appeal, taken from the granting of appellee's motion for summary judgment but before an actual judgment was entered, was

miss. This time, appellee complains of appellant's failure to print some seven pounds of documents as part of its appendix. With great force, and with real or feigned dismay, it tells us that, absent these 135 pages of documents (which, we are advised would have cost about $3,000 to print), we shall be unable to address properly the issues raised by appellant. Considering that appellee has seen fit to print only two of those documents in its own appendix and that it has managed quite well to respond fully to appellant's arguments without reference to the other 133 pages of documents, we think that its complaint, though having a partly legitimate basis, is a bit overstated.

We shall deny the motion to dismiss. In so doing, we do not mean to suggest that appellant's appendix is entirely adequate; it is not. At the very least, appellee's amended petitions for stay of arbitration and its motion for summary judgment should have been printed, as well as those portions of the record that appellant itself has found necessary to refer to (improperly) in its brief. We think, however, that such of the record as is printed in the two appendices suffices to permit us to adjudicate the issues raised by appellant, and that, in the interest of justice, we ought to do so.

## Background

The contract called for the work to be undertaken and completed in designated stages, with final completion by August 1, 1978, after which liquidated damages at the rate of $100 a day were specified. The total contract price was $4,044,910.

---

dismissed for want of a final judgment (S.T. 1981, No. 1276). The circuit court attempted to remedy that problem by entering a judgment on December 28, 1981, from which appellant took another appeal (S.T. 1982, No. 236). Unfortunately, our mandate in No. 1276 was not issued until January 6, 1982, and thus, technically, the circuit court had no jurisdiction to enter the judgment on December 28. On that basis, appellant's second appeal was also dismissed. The circuit court finally entered a procedurally proper judgment on June 22, 1982, from which this (third) appeal was noted.

Attached to the contract, and forming a part of it, was AIA Document A201, General Conditions of the Contract for Construction. Four provisions, or categories of provisions, in those general conditions are relevant here: Article 2, describing the function and authority of the architect; § 8.3, dealing with delays and extensions of time; article 12, concerning changes in the work; and § 7.10, providing for arbitration of disputes. We shall return to these provisions shortly.

Appellant did not complete the work within the time set by the contract. On November 27, 1979, some fifteen months after the August, 1978, deadline, appellee declared a default. It terminated the contract and called upon appellant's surety to complete the work in accordance with its bond. The surety took over the job, but, with appellee's consent, arranged for appellant to continue the actual work. Under this new arrangement, appellant remained on the job, working for the surety, until April 17, 1980, when, for whatever reason, its connection with the job was fully and finally terminated by the surety.

On May 12, 1980, appellant filed a demand for arbitration. The relevant part of its dispute with appellee was defined as follows:

> "As a result of changes in the work directed by the respondent, design deficiencies, owner-directed alterations in the specified sequence of work and other delays and interruptions caused by the owner, the claimant incurred substantial additional costs of performance, including extra work and delay and impact costs, and became entitled to extensions of contract time equal to its progress on the work. Notwithstanding these circumstances, the respondent default terminated the claimant [sic] on November 27, 1979, at which time claimant was 99.6% complete and was on the job working towards final completion. Although the default termination was without justification and claimant protested same, the respondent called upon claimant's per-

formance bond surety to complete the remaining work."

As relief, appellant sought $235,499 allegedly due under the contract plus $547,852 for "additional delay and impact costs." It sought as well an adjudication that "the default termination was without justification under the contract," that it is not responsible for any additional costs incurred by the surety over what it reasonably would have cost appellant to complete the work, and that appellee is not entitled to assess liquidated damages.

Appellee responded to this demand with a petition in the Circuit Court for Montgomery County seeking to stay the arbitration proceeding. In its initial petition, filed June 6, 1980, appellee raised three defenses to the arbitration: (1) that appellant's demand for arbitration was not timely filed; (2) that appellant was not entitled to arbitrate its claim for the balance of the contract price where it had been removed from the job and did not perform the work upon which the claim is based; and (3) that any dispute over completion costs incurred by the surety is not within the scope of the arbitration agreement. By subsequent amendments to its petition, appellee added two more defenses: that appellant waived its right to arbitration by filing a lawsuit against appellee; [2] and that "the claims which are the subject of the demand for arbitration were not presented to [appellee] or its architect within the time required by the agreement between the parties."

After extensive discovery, each party filed a motion for summary judgment. In addition to the various depositions and answers to interrogatories (and exhibits thereto), there were before the court two affidavits of Dr. H. Philip Rohr, on

2. On October 27, 1980, appellant brought a law action against appellee in the Circuit Court for Montgomery County, seeking the same $783,351 ($235,499 + $547,852) claimed in the demand for arbitration. The purpose of the lawsuit, according to the declaration, was to satisfy the special one-year statute of limitations applicable to claims against charter counties. *See* Md. Code Ann. art. 25A, § 1A. Whether that statute applies to actions against county school boards is a subject we need not address in this case. *Compare* Md. Code Ann. Educ. art., § 4-105.

behalf of appellee, and the affidavit of Bruce E. Stauffer, president of appellant, on behalf of appellant. The major thrust of the Stauffer affidavit was that, by their course of conduct, the parties in effect had ignored, and thus waived, the requirements that claims be submitted to and ruled upon by the architect. *Cf. Southern Md. Hosp. v. Edw. M. Crough, Inc.,* 48 Md. App. 401, *cert. den.* 290 Md. 721 (1981).

On September 9, 1981, the court granted appellee's motion on the narrow issue of whether appellant "compl[ied], substantially, with the time provisions of the contract pertaining to presentment of claims." It concluded that appellant had "totally failed to meet the time restrictions agreed to by the parties in A201 Paragraphs *8.3.1* and *8.3.2.*" (Emphasis supplied.)

That was the sole stated basis for the court's decision, upon which judgment staying the arbitration was ultimately entered. The other defenses raised by appellee — in particular the timeliness of the *demand for arbitration* as opposed to the timeliness of appellant's presentment of its claim to the architect and the effect of the "protective" lawsuit filed by appellant — were not discussed or ruled upon by the court. Nor did the court address the arbitrability of appellant's claims that the default termination was without justification, that it was entitled to the unpaid balance of the contract price, that it was not liable for the increased costs incurred by the surety, and that it was not liable for liquidated damages. Finally, with respect to the claims for additional compensation due to extra work or delays caused by appellee, the court omitted any mention of the asserted failure of appellant to comply with the requirements of articles 2 and 12 of the general conditions.

### Discussion

Appellant presents a number of arguments in this appeal as to why the court erred, one of which has merit. Although it may have been possible for the court to determine whether arbitration should be stayed by addressing and resolving the

effect of (1) any delay in demanding the arbitration (§ 7.10), or (2) any failure by appellant to make a timely presentation of its claims to the architect under article 2 (authority of architect), or (3) the lawsuit filed by appellant, it was *not* appropriate for the court, on summary judgment, to stay arbitration proceedings by virtue of noncompliance with § 8.3 (extensions of time).

Md. Code Ann. Courts art., § 3-206 (a) provides that a written agreement to submit to arbitration any controversy arising between the parties in the future is valid and enforceable. When such an agreement exists, or is alleged to exist, the courts are generally enjoined by the statute from interfering with the arbitration process. Indeed, the court's jurisdiction may properly be invoked in but two limited contexts — to compel arbitration or to stay it.

Under § 3-207, if a party to the alleged agreement refuses to submit to arbitration, the party demanding the arbitration may petition the court to enforce the agreement by ordering the arbitration. The only issue in such a proceeding is whether the alleged agreement to arbitrate exists. This is explicitly stated in § 3-207 (c): "If the court determines that the agreement exists, it shall order arbitration. Otherwise it shall deny the petition."

Section 3-208 permits a party who "denies the existence of the arbitration agreement" to "petition a court to stay commenced or threatened arbitration proceedings." As with a petition to compel arbitration under § 3-207, the sole issue in such a proceeding, according to the statute, is whether the agreement exists. Section 3-208(c) provides:

> "If the court determines that existence of the arbitration agreement is in substantial and bona fide dispute, it shall try this issue promptly and order a stay if it finds for the petitioner. If the court finds for the adverse party, it shall order the parties to proceed with arbitration."

The limited nature of either proceeding, under §§ 3-207 or 3-208, is confirmed by § 3-210:

> "An order for arbitration shall not be refused or an arbitration proceeding stayed:
>
> (1) On the ground that the claim in issue lacks merit or bona fides; or
>
> (2) Because a valid basis for the claim sought to be arbitrated has not been shown."

These statutory pronouncements appear to be simple and direct: in an action to compel or to stay arbitration, the court should consider but one thing — is there in existence an agreement to arbitrate the dispute sought to be arbitrated? Unfortunately, the seeming simplicity is deceptive.

This Court and the Court of Appeals addressed one aspect of the problem in *Bel Pre Med. v. Frederick Contr.*, 21 Md. App. 307 (1974), *aff'd but modified Frederick Contr. v. Bel Pre Med.,* 274 Md. 307 (1975). That case had a somewhat complex procedural history, but it ultimately came to us from an order of the circuit court enjoining an arbitration proceeding.

The dispute there, as here, was between an owner and a contractor operating under the AIA Form A201 General Conditions. When the owner failed to make final payment on the contract, the contractor filed a mechanic's lien which it promptly sought to enforce. The owner attempted to block the mechanic's lien proceeding by demanding arbitration under the agreement and claiming that the contractor had forfeited its right to the lien by failing itself to demand arbitration. The contractor, on the other hand, sought to enjoin the arbitration on the basis that the owner had waived its right to that remedy by failing to make a timely demand for it. The circuit court rejected the owner's defense to the lien proceeding, found that the owner's demand for arbitration was not timely, and enjoined the arbitration.

We did not consider the issue as one of "substantive arbitrability" — *i.e.,* whether the claims and counterclaims between the parties were subject to arbitration under the agreement. That, indeed, was not really contested. Rather, we regarded the "precise issue" as "whether the question of

compliance with the procedural prerequisite of a timely demand growing out of the arbitrable dispute should be determined by the arbitrator or a court." 21 Md. App. at 323. Relying principally upon *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543 (1964), which involved the arbitration provisions in the Labor Management Relations Act (29 U.S.C., § 185), we concluded that that issue was for the arbitrators to resolve, not the court. For that reason, we vacated the injunction.

The Court of Appeals reached a different conclusion, but the same result. Rejecting the approach taken in the labor relations cases, as set forth in *John Wiley & Sons, Inc.,* the Court concluded that "[i]n the final analysis, it is for the courts and not the arbitrators to determine the timeliness of a demand for arbitration." 274 Md. at 314. The "timeliness of a demand for arbitration," it continued at p. 315, "is a threshold question, which is, in the first instance, for the courts. . ." .

Having established that principle, and without mentioning the fact that the trial court had specifically found that the demand by Bel Pre was *not* made within a reasonable time (*see* 21 Md. App. at 313-14), the Court held, presumably as a matter of law, that the demand "was made within the reasonable time stipulated by § 7.10.2 of the General Conditions." 274 Md. at 315.

Although the Court of Appeals made a passing reference to Maryland's version of the Uniform Arbitration Act (274 Md. at 314), it did not attempt to relate the principle which it established to that Act, in particular to those provisions (§§ 3-207, 3-208, and 3-210) discussed and quoted above. It is at least implicit, however, that, by considering the issue of delay in demanding arbitration to be a justiciable rather than an arbitrable one, it regarded the effect of such a delay as going to the (continued) existence or enforceability of the agreement to arbitrate rather than to the validity of the underlying claim. In effect, the Court treated the matter of delay as one of waiver — that, by failing to make a timely demand, the party had waived his contractual right to resolve the dispute through arbitration.

That approach was made more apparent in *Chas. J. Frank, Inc. v. Assoc. Jewish Ch.,* 294 Md. 443 (1982), also involving a series of disputes arising from a construction contract. The threshold issue in that case was whether the owner was entitled to a stay of arbitration proceedings demanded by the contractor on the ground that the contractor had previously participated in litigation against the owner with respect to another aspect of the work.

There is nothing in the statute itself, of course, precluding arbitration on that ground, but the Court viewed the problem clearly as one of *waiver.* It held, in language appearing at pp. 448-49, that "[b]ecause the right to arbitrate is a matter of contract, it is possible for parties to waive that right," that "[a] waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances," that " '[A]cts relied upon as constituting a waiver of the provisions' of a contract must be inconsistent with an intention to insist upon enforcing such provisions," that "[t]he intention to waive must be clearly established and will not be inferred from equivocal acts or language," and that "whether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstances of each case."

Upon the premise, which is more or less universally held, that a resort to litigation is inconsistent with an intent to arbitrate, the Court concluded that one who litigates an issue that otherwise would be subject to arbitration waives his right subsequently to arbitrate that issue. The waiver, however, "is limited to those issues raised and/or decided in the judicial proceeding and, absent additional evidence of intent, the waiver does not extend to any unrelated issues arising under the contract." *Id.* at 454.

Because, as we shall see, the concepts of waiver and delay are sometimes used a bit loosely and interchangeably in this area, it is important to keep clearly in mind what was before the Court in *Bel Pre* and *Chas. J. Frank, Inc.,* and what, in fact, was decided in those cases.

The issue in both cases was whether, by its acts or omissions, the party seeking arbitration had waived its contractual right to that particular forum. A finding of waiver, in that context, would mean no more than that the contractual right to compel arbitration had become unenforceable; that right would be regarded as having been voluntarily relinquished and thus treated as though it had never existed. Such a finding would have no bearing, however, upon either the validity or the enforceability of the underlying claims (or the defenses to them). It would mean only that the dispute over the claims would have to be resolved through the judicial process, in which all arguments for and against the claims could be presented as though there never had been an arbitration agreement.

When viewed in that manner, the Court of Appeals' conclusion in *Bel Pre,* though not universally held, is certainly not inconsistent with the provisions of §§ 3-207, 3-208, or 3-210. Because an inappropriate delay in demanding arbitration acts as a relinquishment of the contractual right to compel such a proceeding, where that matter is in dispute, its resolution constitutes, in effect, a determination of whether the agreement to arbitrate still exists; and, under the statute, that *is* a proper issue for the court.

As we have noted, the issues addressed in *Bel Pre* and *Chas. J. Frank, Inc.* were raised by appellee in the proceeding below, but they were not adjudicated by the court; and we are in no position to adjudicate them here. With regard to the timeliness of the demand for arbitration, the facts are not so clear as they were in *Bel Pre.* There is considerable dispute in the record as to when some of the claims arose, when the issues and the damages arising from them became fixed, and when the demand for arbitration could first reasonably have been made. These are matters that, under § 3-208(c), the circuit court could, and should, have tried and determined. As to the added defense of waiver by virtue of the subsequent lawsuit, it is not entirely clear from the record before us whether appellee in effect abandoned that defense by failing to argue it in its motion for summary

judgment or, in any event, what all of the circumstances of that lawsuit were.

The circuit court focused only upon the alleged delays on appellant's part in presenting its various claims to the architect; and even as to that, it addressed appellant's derelictions only in the context of § 8.3 of the general conditions. The problem engendered by that narrow approach becomes evident when we examine in closer detail the relevant parts of Document A201 General Conditions.

(1) Article 2 designates the architect, in the first instance, as the interpreter of the contract and the judge of the owner's and the contractor's performance under it (§ 2.2.6). It provides that "[c]laims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for decision..." (§ 2.2.7). With two exceptions not relevant here, any claim, dispute, or other matter submitted to the architect "shall be subject to arbitration upon the written demand of either party"; however, no such demand for arbitration may be made until the architect has either rendered his decision or has declined to do so within ten days after presentation of the matter to him (§ 2.2.10). Finally, if the architect renders a written decision that is subject to appeal, "no demand for arbitration of a claim, dispute or other matter covered by such decision may be made later than thirty days after the date on which the party making the demand received the decision" (§ 2.2.11).

(2) Section 8.3 (Delays and Extensions of Time) also involves the architect. Subsection 8.3.1 provides that:

> "If the Contractor is delayed at any time in the progress of the Work by any act or neglect of the Owner or the Architect . . . or by changes ordered in the Work . . . or by any cause which the Architect determines may justify the delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine."

Subsection 8.3.2 provides, however, that "[a]ll claims for extension of time shall be made in writing to the Architect no more than twenty days after the occurrence of the delay; *otherwise they shall be waived.* In the case of a continuing cause of delay only one claim is necessary." (Emphasis supplied.)

(3) Section 12.2 (Claims for Additional Cost) sets forth a similar procedure. Subsection 12.2.1 provides, in relevant part:

> "If the Contractor wishes to make a claim for an increase in the Contract Sum, he shall give the Architect written notice thereof within twenty days after the occurrence of the event giving rise to such claim. This notice shall be given by the Contractor before proceeding to execute the Work, except in an emergency endangering life or property.... *No such claim shall be valid unless so made."* (Emphasis supplied.)

(4) Finally, with two exceptions not relevant here, § 7.10.1 provides that "[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . unless the parties mutually agree otherwise." Subsection 7.10.2 states, however, that:

> "The demand for arbitration shall be made . . . within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations."

By comparing these various provisions, one can see immediately the important contrasts between them. No specific penalty or sanction is provided for the failure to present a "claim, dispute or other matter" to the architect, as required

by § 2.2.7. Failure to make a timely demand for arbitration under § 2.2.11 (*i.e.,* following an adverse decision by the architect), or in accordance with § 7.10.2, under the theory of *Bel Pre* and *Chas. J. Frank, Inc.,* and upon objection by the owner, would serve to preclude arbitration of those issues and leave the contractor to such judicial remedies as it may have. But noncompliance with § 8.3 or § 12.2 operates to invalidate or annul *the claim itself,* and not just the agreement to arbitrate.

With regard to its specific claims appellant complained of two things, each of which had two potential implications. The things complained of were change orders increasing the scope of the work and delays occasioned by the acts or omissions of appellee and its agents; the potential (and alleged) consequences were additional costs to appellee (cognizable under § 12.2) and an inability to complete the work on schedule (cognizable under § 8.3).

Though stating the issue as whether appellant complied "with the time provisions of the contract pertaining to presentment of claims," which would take in article 2, § 12.2.1, and § 8.3.2. the court, as noted, based its decision to stay the arbitration upon the narrow finding that appellant had "totally failed to meet the time restrictions agreed to by the parties in A201 Paragraphs 8.3.1 and 8.3.2."

Sections 8.3.1 and 8.3.2 apply only to requests for extensions of time; they have no bearing upon claims for increased compensation. On the other hand, a default in compliance with § 8.3.2 annuls the claim subject to that section. Complicating the matter a bit more, the court made its ruling on summary judgment, in the face of an affidavit which, though not the most articulate, fairly presented a factual issue as to whether the requirements of § 8.3 had been waived by the conduct of the parties.

We thus have this situation. By invoking § 8.3 at all, the court purported to adjudicate not just the right to arbitration but the validity of the underlying claims, which the statute expressly prohibits; by applying § 8.3 to appellant's claims for increased compensation, as well as to

its general assertions regarding the balance of the contract sum, the costs incurred by the surety, and its liability for liquidated damages, it has misconstrued the contract; and by acting on summary judgment in the face of the Stauffer affidavit, it has contravened Maryland Rule 610.[3] Clearly, a judgment rendered on that basis cannot stand.

We think that, in the interest of justice, the best approach is for us to vacate the judgment and remand the case under Maryland Rule 1071a for further proceedings. Specifically, the court should address and determine whether, by failing to make a timely demand for arbitration under § 7.10, or (if that defense has not been abandoned) by filing a lawsuit against appellee, appellant has effectively waived its contractual right to arbitration. If no waiver is found on those grounds, the court should then consider whether and to what extent arbitration has been waived by appellant's failure to comply with the requirements of article 2 of the general conditions. If a waiver is found upon any of those grounds, arbitration should be stayed; otherwise, appellee's petition, as amended, should be denied.

> *Judgment vacated; case remanded pursuant to Maryland Rule 1071 for further proceedings in accordance with this opinion; appellee to pay the costs.*

---

**3.** We have not ignored the New York cases (*Board of Education v. Wager Construction Corp.*, 333 N.E.2d 353 (1975), and *Exercycle Corporation v. Maratta,* 174 N.E.2d 463 (1961)) cited by appellee. In light of the Maryland statute and cases and the contractual provisions at issue here, we do not find them to be relevant and compelling authority.