518 A.2d 137

**ROSECROFT TROTTING & PACING ASSOCIATION, INC.**

**v.**

**ELECTRONIC RACE PATROL, INC.**

**No. 275, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Dec. 5, 1986.

Ellis J. Koch (O'Malley, Miles, McCarthy & Harrell, on the brief), Upper Marlboro, for appellant.

Kenneth A. Lechter (Fisher & Walcek, on the brief), Marlow Heights, for appellee.

Argued before WEANT, BISHOP and WENNER, JJ.

BISHOP, Judge.

Rosecroft Trotting & Pacing Association, Inc., (Rosecroft) appeals from an Order of the Circuit Court for Prince George's County (Perry, J.) that granted appellee's Motion for Summary Judgment and dismissed appellant's complaint to stay arbitration.

Rosecroft asks whether the trial court erred:

I. When it determined that the amended arbitration claim fell within the scope of the arbitration clause; and

II. In finding that the timeliness issue was for the arbitrators, and not the court, to decide.

## FACTS

On December 31, 1974, appellee, Electronic Race Patrol, Inc. (ERP) entered into a contract with Rosecroft to provide audio visual services at Rosecroft Raceway. The contract contained no arbitration clause. To remedy disputes which arose during the performance of the contract, Rosecroft and ERP entered into a written agreement on October 19, 1979, by which the parties agreed to modify particular terms of the 1974 contract and to resolve by arbitration all past and future disputes pertaining to the contract.

Paragraph 4 of the 1979 agreement prohibited the officers and directors of Rosecroft from making any communications to anyone, either oral or written, that would tend to degrade or disparage the business reputation of ERP. After the expiration of the contract, ERP filed a demand for arbitration of five contractual claims against Rosecroft, none of which related to paragraph 4 of the 1979 agreement. In July of 1985, however, ERP amended its claim, alleging that Rosecroft also had breached paragraph 4, and sought damages totalling almost four and one-half million dollars.

Contending that disputes arising under paragraph 4 were not arbitrable, Rosecroft declined to submit that matter to arbitration. After both parties had the opportunity to comment fully on the arbitrability of the issue, the arbitrators

determined that, pursuant to the 1979 agreement, the amended claim was arbitrable. Rosecroft then filed its Petition to Stay Arbitration, raising the issues of applicability of the arbitration clause and timeliness. The trial court granted ERP's Motion for Summary Judgment on both issues.

## I.

### *Scope of the Arbitration Clause*

In arbitration, parties voluntarily agree to substitute an impartial private arbitrator in place of the public tribunal. *Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 103, 468 A.2d 91 (1983). The advantages of this substitution are clear; parties are able to minimize the formalities, delay, expenses, and vexation of ordinary litigation. *Schreiber v. Pacific Coast Fire Insurance Company*, 195 Md. 639, 647, 75 A.2d 108 (1950); *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, 21 Md.App. 307, 315, 320 A.2d 558 (1974). If a party has not bound itself contractually to arbitration, a court cannot compel the party to submit the dispute to arbitration. *Gold Coast Mall*, 298 Md. at 103, 468 A.2d 91. *United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

Since its enactment in 1965, the Maryland Uniform Arbitration Act [1] has established a legislative policy that favors the enforcement of executory agreements to arbitrate. *Gold Coast Mall*, 298 Md. at 103, 468 A.2d 91; *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443, 448, 450 A.2d 1304 (1982). By providing that executory agreements to arbitrate are "valid, enforce-

---

**1.** 1965 Laws of Maryland, Ch. 231, § 2. Article 7 was repealed and reenacted as §§ 3–201–234 and § 12–303(c)(9) of the Courts Article. 1973 Laws of Maryland (Ex.Sess.), Ch. 2, § 1, Title 3, Subtitle 2 and Title 12, Subtitle 3. On the whole, the new Arbitration Subtitle either derives its language from Article 7 or uses language from Article 7 with minor changes in style. Revisor's Notes, Subtitle 2, Arbitration and Award, of the Court's Article.

able and irrevocable," MD. CTS. & JUD.PROC.CODE ANN. § 3–206 (1984), the function of the court was strictly limited to the resolution of a single issue: whether the parties intended to submit the subject matter of the dispute to arbitration. *Gold Coast Mall,* 298 Md. at 103–04, 468 A.2d 91; *Bel Pre,* 21 Md.App. at 320, 320 A.2d 558.

■ We are asked in the case *sub judice* to address this precise issue: the scope of an executory agreement to arbitrate. The parties disagree as to whether the arbitration provision contained in paragraph 11 of the 1979 agreement applies to the covenant not to disparage or degrade set out in paragraph 4. The arbitration clause provides in pertinent part:

> Rosecroft and the Patrol agree that *any* dispute or disagreement *concerning, pertaining, or relating* to the performance of the Contract from January 1, 1980, and thereafter shall be submitted to arbitration by an impartial arbitrator selected by the parties.

(emphasis added). The arbitrator and the trial court classified this as a "catch-all" clause that authorizes the arbitration of any and all disputes relating to the performance of the contract. We agree with this characterization.

As a general rule, "[w]here there is a broad arbitration clause, calling for the arbitration of any and all disputes arising out of the contract, all issues are arbitrable unless expressly and specifically excluded." *Gold Coast Mall,* 298 Md. at 104, 468 A.2d 91; *Bel Pre,* 21 Md.App. at 321, 320 A.2d 558. The language of the 1979 agreement created a broad arbitration clause with no specific exclusions. Accordingly, all disputes arising from the original contract as well as the modified terms originating in the 1979 agreement fall within the ambit of the arbitration clause. The covenant not to disparage or degrade contained in paragraph 4 is one such contractual provision. Since this covenant was an attempt to regulate the manner in which Rosecroft and ERP dealt with one another during the performance of the contract so as to ensure the smooth

transaction of business, it is clearly a contractual matter subject to arbitration.

Although no explicit exclusion exists, Rosecroft contends that we should nevertheless read one into the arbitration clause. Specifically, Rosecroft points to paragraph 10 of the 1979 agreement as evidence of the parties' intent to limit the applicability of the catch-all clause. Paragraph 10 pertains to the disposition of ERP's cable in place at the Rosecroft facility, after the termination of the service contract. This provision incorporated a separate arbitration provision, establishing that an arbitrator shall determine compensation if the parties fail to agree on a purchase price. Rosecroft argues that a broad construction of the arbitration clause would render the specific arbitration provision of paragraph 10 as surplusage. Citing *Jeffrey Sneider-Maryland, Inc. v. Lavay,* 28 Md.App. 229, 345 A.2d 79 (1975), for the proposition that courts should construe contracts on a whole so as to avoid surplusage, Rosecroft concludes that inclusion of this arbitration provision is the clearest evidence that the parties did not intend paragraph 11 to apply broadly to the entire agreement.

We do not agree. First, Rosecroft provides no authority for limiting, without express exclusion, the scope of arbitration clauses. In light of the well-recognized preference to enforce fully executory agreements to arbitrate, *Gold Coast Mall,* 298 Md. at 103, 468 A.2d 91; *Charles J. Frank, Inc.,* 294 Md. at 448, 450 A.2d 1304, a broad, rather than narrow, interpretation of paragraph 11 seems appropriate. Second, Rosecroft's surplusage argument is misguided. The agreement that the parties forged in October 1979 served several purposes: it authorized the sale of Rosecroft stock from ERP to Rosecroft; it provided for the disposition of ERP's cable upon termination of the contract; it amended the original contract by modifying and adding to the existing terms. The provisions pertaining to the sale of stock and disposition of cable upon termination of the agreement clearly fell outside the ambit of the service contract. As a result, the parties decided to incorporate an

arbitration clause into the latter section. As to matters relating to the performance of the contract, such as the covenant not to disparage under paragraph 4, the catch-all arbitration provision applies without rendering as surplusage the separate arbitration clause for cable disposition.

## II.

### Timeliness of ERP's Amended Claim

■ ERP filed its demand for arbitration of five contractual claims on April 29, 1985. Pursuant to the arbitration clause in paragraph 11, Rosecroft agreed to submit these contractual disputes to arbitration. While arbitration was in full swing, ERP amended its demand by seeking damages for breach of the convenant not to disparage or degrade. In its Complaint to Stay Arbitration, Rosecroft opposed ERP's amended claim on the ground that "demand for arbitration was not timely made." On appeal, Rosecroft contends that the timeliness issue was for the court, and not the arbitrator, to decide.

As a general rule, "timeliness of demand is a threshold question, which is, in the first instance, for the courts ... [to decide]." *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.*, 274 Md. 307, 315, 334 A.2d 526 (1974); *accord Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443, 450 A.2d 1304 (1981). Because the concept of "timeliness" is somewhat ambiguous, it is important to keep clearly in mind what was before the Court in *Bel Pre* and *Charles J. Frank* and what the Court in fact decided. In both cases, one party to a contractual dispute attempted to enjoin arbitration proceedings on the ground that the opposing party's delay in demanding arbitration constituted a waiver of that right. As Judge Wilner explained for this Court,

> [T]he issue in both cases was whether, by its acts or omissions, the party seeking arbitration had waived its contractual right to that particular forum.... Because an inappropriate delay in demanding arbitration acts as a

relinquishment of the contractual right to compel such a proceeding, where that matter is in dispute, its resolution constitutes, in effect, a determination of whether the agreement to arbitrate still exists; and, under the statute, that is a proper issue for the court.

*Stauffer Construction Company, Inc. v. Board of Education of Montgomery County,* 54 Md.App. 658, 668, 460 A.2d 609 (1983).

In its complaint to stay arbitration, Rosecroft sought to enjoin arbitration of the amended claim on the ground that "the demand for arbitration ... [was] not timely made." The complaint, however, failed to indicate the precise nature of this objection. If appellant had based its objection on the ground that an inappropriate delay in demanding arbitration amounted to ERP's relinquishment of its contractual right to arbitrate, then the courts would be obliged to resolve that issue. "[I]n an action to compel or stay arbitration, the court should consider but one thing—is there in existence an agreement to arbitrate the dispute sought to be arbitrated?" *Stauffer,* 54 Md.App. at 665, 460 A.2d 609. In deciding whether a party has waived its right to arbitrate, the court is in effect determining whether the agreement to arbitrate still exists. This issue is within the province of the court.

From the facts of this case as well as from Rosecroft's own brief, the waiver issue which Rosecroft raised and attempted to litigate was not the waiver issue normally decided by the courts. First, the procedural posture of the parties logically precluded Rosecroft from raising that issue. At the time that the complaint was filed, the arbitration agreement was being carried out in full force and effect, without objection from Rosecroft. Rosecroft could have hardly objected to an arbitration to which it was already an active participant. Second, in its own brief, Rosecroft characterized the timeliness issue as unrelated to whether ERP had relinquished its contractual right to arbitrate: "Plainly the issue of timeliness is a question of fact as to when the incidents occurred and whether a

specific incident constitutes a degrading or disparaging of ERP." This issue pertains only to the timeliness of the claim which is the subject of arbitration and not to the right to arbitrate.

Although Rosecroft ignores the distinction, timeliness of a claim to arbitrate is not equivalent to timeliness of the substantive claim to be arbitrated. The former requires a determination of whether an agreement to arbitrate still exists based on possible waiver and is a proper issue for the court. The latter requires factual determinations as to whether ERP was degraded or disparaged, when these specific incidents occurred, and whether, based on the time of the occurrences, they may be the subject of arbitration. The resolution of such matters falls within the province of the arbitrator, and not the court. Since Rosecroft raises a timeliness issue of the latter kind, we hold that the arbitrator must resolve that issue in the first instance.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANT.