564 A.2d 408

**NSC CONTRACTORS, INC.**

**v.**

**Most Reverend William D. BORDERS.**

**No. 78, Sept. Term, 1988.**

Court of Appeals of Maryland.

Oct. 11, 1989.

Alan H. Kent (Schnader, Harrison, Segal & Lewis, both on brief), Washington, D.C., for petitioner.

Michael W. Skojec (Thomas N. Biddison, Jr., Gallagher, Evelius & Jones, all on brief), Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), specially assigned.

BLACKWELL, Judge.

This construction contract dispute involves an interpretation of the appeal provisions of a standard form contract. The controversy arose regarding an architect's decision to withhold money due to an unremedied artistic defect in brickwork. Our central concern is whether the architect's judgment regarding the amount of damages is subject to judicial review. The trial judge affirmed the architect's decision to withhold final payment from the contractor, ruling that this decision was not subject to judicial review.

We hold the lower court erred in ruling that the architect's determination as to the amount of damages was "final" and therefore binding upon the parties.

On December 21, 1984, Petitioner, NSC Contractors, Inc. (NSC), and Respondent, Most Reverend William D. Borders, Roman Catholic Archbishop of Baltimore (Borders), entered into a contract for the construction of a new church building for the Roman Catholic Parish of Our Lady of Perpetual Help in Howard County, Maryland. The contract was modeled after widely-used standard forms published by the American Institute of Architects.[1] The firm of Meyers and D'Aleo was designated as the architect for the project. The exterior walls of the building were to be constructed with a special facing brick. On March 11, 1985, Borders directed a change in the type of facing brick originally specified in the contract and selected Maryland Clay Products "Plantation" brick for use at the project. NSC subsequently constructed the work with the newly specified brick.

The specified brick was manufactured in a full range of twenty to twenty-five different shades of colors from light to dark. Ideally, the different color bricks are randomly distributed throughout the finished walls. No single color was to dominate any particular area of the walls. A sample panel of the brickwork, consisting of approximately twenty-four bricks, was prepared and was to be used as a standard against which the bricks were to be judged.

About three months after the project commenced, the brickwork was found to have a coloration discrepancy in portions of the exterior south wall near the west corner. The size of the discrepancy was in dispute. NSC alleged the portions of the brick walls which showed color concentrations were limited to ten to fifteen percent of the entire surface area. Borders claimed that "large areas of the

---

1. The American Institute of Architects (AIA) forms, nos. A101 (1977 ed.) and A201 (1976 ed.), were endorsed by the parties.

walls appeared to be one color creating an unsightly appearance."

NSC later removed and replaced portions of the south wall, but the replacement brick similarly appeared to the architect to have the same color concentration problems. On two other sections of the exterior walls, NSC attempted to "mask" color concentrations with a paint application. The architect reviewed each of the masking attempts and rejected the result for numerous reasons. Among the reasons for rejection included the following: 1) the masking paint did not properly match the colors of the bricks, 2) the masking paint flaked off easily, and 3) there were still concentrations of colors. The architect rejected the brickwork on the exterior walls of the building as not being in conformity with the approved sample and as being "aesthetically undesirable."

The architect notified NSC that the defective brickwork would necessarily need to be removed and properly replaced. Because the type of brick was no longer produced, the architect determined that the entire brickwork would have to be replaced as replacement of only portions of the walls would likely result in another coloration problem. The architect also notified NSC that the cost of the work would be withheld. NSC refused to replace the brick and the architect refused to certify final payment.

On March 20, 1986, NSC filed a petition to establish and enforce a mechanics lien in the amount of the balance due on the contract, $142,009.88. Borders filed an answer and later an amended counterclaim seeking to recover the cost of replacing the defective walls, an amount claimed to be $216,000. An interlocutory mechanic's lien was established by the Circuit Court for Howard County for the amount stated in the original petition on May 21, 1986. The contract balance was later increased to $144,097.88 by agreement of the parties. NSC filed a claim for breach of contract and in a second count sought damages on a theory

of quantum meruit seeking to recover the total amount of the contract balance withheld, plus interest.[2] Although NSC entitled this pleading as a separate "counterclaim," we shall refer to it as a claim for monetary damages seeking a final order.[3] A court trial was held in the Circuit Court for Howard County on March 17, 1987. The court terminated the interlocutory mechanic's lien and denied NSC's claim for the balance due on the contract. The trial judge additionally determined that the architect had authority under general condition 2.2.11 (G.C. 2.2.11) to reject the brickwork on the grounds of "artistic effect."[4] Paragraph 9.6.1 of the general conditions specifies that, "The Architect may ... decline to certify payment ... to such extent as may be necessary in his opinion .to protect the owner from loss because of: .1 defective work not remedied...." The court found it appropriate to allow Borders to retain the $144,-097.88 withheld from the contract amount.[5] The court further noted pursuant to G.C. 13.2.1 it was agreed that NSC would "correct all work rejected by the Architect as

---

**2.** NSC claimed in its pleadings that it was entitled to interest at the rate of 10% per annum from the date the monies were due and owing, prejudgment interest, plus costs.

**3.** NSC's use of the term "counterclaim" in its pleadings is incorrect. After filing the petition to establish a mechanic's lien, with accompanying exhibits and an affidavit, counsel sought a final order in the amount of $144,097.38, the total amount owed under the contract. Separate counts of breach of contract and quantum meruit were alleged. Counsel intended to pursue separate and distinct causes of action. The prosecution of a mechanic's lien claim does not affect the right of the claimant to maintain an *in personam* action against the property owner, if such action is otherwise available. Maryland Code (1974, 1988 Repl.Vol.), Real Property Article, § 9–111; *see* Maryland Rule 2–301; *cf.* Md.Rule 2–303(c).

**4.** G.C. 2.2.11 provides in full:
The Architect's decisions in matters relating to *artistic effect* will be final if consistent with the intent of the contract documents. (Emphasis added).

**5.** This ruling was made after interpreting paragraphs G.C. 9.6.1, 9.6.2 and 13.2.1. *See infra* at 8–9. The circuit court entered judgment in favor of Borders on the counterclaim.

defective.... NSC contracted that it would promptly correct any defective work, and it was obligated to do so."

Finally, the trial court ruled that Borders had not met its burden of proof with regard to proving "its measure of damages to the requisite reasonable certainty." [6] Nevertheless, the court concluded that G.C. 9.6.1 and 9.6.2 provided the appropriate remedy in authorizing the architect to withhold payment until the defective work was remedied. NSC filed a timely motion to alter and amend the judgment which was denied by the circuit court in a memorandum and order filed August 28, 1987. In ruling on the motion to alter and amend the judgment, the trial judge clarified his decision by writing,

The court reads the language of this provision [9.6.1.1] as *vesting the architect with unqualified authority to withhold certification of payment in order to protect the owner....* The court interprets the authority granted by G.C. 9.6 to be *final and binding.* The court does not agree with NSC that General Conditions 2.2.12 and 7.9.1 limit the authority conveyed in G.C. 9.6.... The court does not read the general language of this provision [2.2.12] as controlling the explicit language of G.C. 9.6.1. (Emphasis added).

In an unreported opinion, the Court of Special Appeals affirmed holding "that the trial court was not clearly erroneous in finding that the amount of payment withheld under G.C. 9.6.1 was a final and binding decision of the architect where such payment was withheld due to artistic defects."

In order to fully understand the essential terms of the parties' agreement, we shall set forth the following relevant provisions of the contract in dispute:

---

**6.** At trial, Borders presented the "expert" testimony of Franz Martin, the director of construction administration for the Architect. He stated that to demolish and replace the exterior walls would cost approximately $214,000.00. He was unable to fully explain the calculations used to reach this estimate.

GENERAL CONDITIONS OF

THE CONTRACT FOR CONSTRUCTION

ARTICLE 2

ARCHITECT

**2.2.7** *The Architect will be the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both the Owner and Contractor.*

\* \* \* \* \* \*

2.2.9 Claims, disputes and other matters in question between the Contractor and the Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for decision which he will render in writing within a reasonable time.

\* \* \* \* \* \*

**2.2.11** *The Architect's decisions in matters relating to artistic effect will be final if consistent with the intent of the Contract Documents.*

**2.2.12** *Any claim, dispute or other matter in question between the Contractor and the Owner referred to the Architect, except those relating to artistic effect as provided in Subparagraph 2.2.11 and except those which have been waived by the making or acceptance of final payment as provided in Subparagraphs 9.9.4 and 9.9.5, shall be subject to arbitration upon the written demand of either party....* When such a written decision of the Architect states (1) that the decision is final but subject to appeal, and (2) that any demand for arbitration of a claim, dispute or other matter covered by such decision must be made within thirty days after the date on which the party making the demand receives the written decision, failure to demand arbitration within said thirty days' period will result in the Architect's decision

becoming final and binding upon the Owner and the Contractor.

\* \* \* \* \* \*

## ARTICLE 7

## MISCELLANEOUS PROVISIONS

7.9.1 *All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, except as provided in Subparagraph 2.2.11 with respect to the Architect's decisions on matters relating to artistic effect* and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.9.4 and 9.9.5, *shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise....*

\* \* \* \* \* \*

## ARTICLE 9

## PAYMENTS AND COMPLETION

9.6 PAYMENTS WITHHELD

9.6.1 *The Architect may decline to certify payment and may withhold his Certificate in whole or in part, to the extent necessary reasonably to protect the Owner,* if in his opinion he is unable to make representations to the Owner as provided in Subparagraph 9.4.2. If the Architect is unable to make representations to the Owner as provided in Subparagraph 9.4.2 and to certify payment in the amount of the Application, he will notify the Contractor as provided in Subparagraph 9.4.1. If the Contractor and the Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which he is able to make such representations to the Owner. *The Architect may also decline to certify payment or,* because of subsequently discovered evidence or subsequent observations,

*he may nullify the whole or any part of any Certificate for Payment previously issued, to such extent as may be necessary in his opinion to protect the Owner from loss because of:*

*.1 defective Work not remedied.*

9.6.2 When the above grounds in Subparagraph 9.6.1 are removed, payment shall be made for amounts withheld because of them.

Our initial focus is whether the architect's decision regarding the amount of money withheld under G.C. 9.6.1 ("necessary in his opinion to protect the Owner from loss because of: .1 defective Work not remedied.") is subject to the review provisions of G.C. 2.2.12 ("Any claim, dispute or other matter in question between the Contractor and the Owner shall be subject to arbitration upon the written demand of either party.") and G.C. 7.9.1 ("All claims, disputes and other matters in question between the Contractor and the Owner ... shall be decided by arbitration."). The parties agree that the architect's initial decision rejecting the brickwork on the ground of artistic effect is "final" and therefore not subject to further review.

We note that the disputed provisions specifically refer to the parties' right to review of the architect's decisions through arbitration. In *Chas. J. Frank, Inc. v. Assoc. Jewish Ch.*, 294 Md. 443, 450 A.2d 1304 (1982), we stated the general rule that parties may waive their right to arbitration if such intention is clearly established from the facts and circumstances of the case. *Id.* at 448–49, 450 A.2d at 1306–07 (other citations omitted). Where the parties seek to resolve certain arbitrable matters through litigation, the right to arbitration is waived as to those matters necessarily resolved in the proceedings. *Id.* at 450, 450 A.2d at 1307.

In the present case, there was no demand for arbitration by either party. NSC stated in the petition for a writ of certiorari that the parties voluntarily waived their right to arbitration. Borders does not contest this position.

NSC sought redress in the Circuit Court for Howard County by filing a claim for monetary damages seeking a final judgment order. This use of litigation to resolve the dispute as to the proper amount of money withheld resulted in a waiver of arbitration. Both the trial court and the Court of Special Appeals indicated that the parties had waived their rights to arbitration in this case. We agree. For purposes of focusing on the finality of the architect's decisions, we shall refer to the arbitration provisions as general appeal sections. The general conditions of the contract were set up clearly comparing architect's decisions as either "final" or subject to arbitration.

As a general principle, "where there is a broad arbitration clause, calling for the arbitration of any and all disputes arising out of the contract, all issues are arbitrable *unless expressly and specifically excluded." Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 104, 468 A.2d 91, 95 (1983) (other citations omitted); *see, e.g., United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 581, 584–85, 80 S.Ct. 1343, 1352, 1354, 4 L.Ed.2d 1403 (1960). When interpreting an arbitration clause, as when interpreting any contract provision, the agreement must be considered as a whole. *Gold Coast Mall, supra,* 298 Md. at 108, 468 A.2d at 97; *cf. Laurel Race Course v. Regal Construction Co.*, 274 Md. 142, 153, 333 A.2d 319, 327 (1975).

In *Rosecroft Trotting & Pacing Ass'n v. Electronic Race Patrol, Inc.*, 69 Md.App. 405, 410, 518 A.2d 137, 139 (1986), the Court of Special Appeals held that, "[i]n light of the well recognized preference to enforce fully executory agreements to arbitrate, a broad, rather than narrow, interpretation of [the arbitration provision] seems appropriate." *Id.*

Under the circumstances presented, the architect's decision to withhold final certification of payment under the contract was an economic decision, and not purely artistic. The dispute arising out of this decision is therefore reviewable under the broad arbitration provisions of G.C. 2.2.12 and

7.9.1. The specific exclusion for the architect's decisions "relating to artistic effect," providing for a "final" decision, is not applicable as the matter is not consistent with the intent of the contract documents. G.C. 9.6.1 expressly provides that certification of payment may be withheld for "defective work not remedied." While the architect's decision to reject the brickwork on the grounds of artistic effect is not subject to arbitration, the issues relating to the amount of money properly withheld and damages are clearly reviewable. The amount of contract funds withheld is a separate decision involving distinct factors. This decision involved matters unrelated to the artistic determination that the brickwork was nonconforming. The costs associated with brick repair and replacement, labor and materials are all topics to be evaluated by experts in the construction industry.

General condition 9.6.1 must be interpreted in conjunction with the other provisions of the contract, specifically the review sections of G.C. 7.9.1 and 2.2.12. Here, the architect concluded that the entire brickwork would have to be replaced because the contracted for brick was no longer in production. The architect demanded that NSC replace its brickwork with a new brick of unspecified type and color and for which no artistic standard was agreed upon. This replacement decision was not "final" under G.C. 2.2.11. The architect's determination of how to correct the defect and the reasonable costs thereof was plainly reviewable under the arbitration provisions of G.C. 7.9.1 and 2.2.12. The trial court erred in granting judgment for Borders on the counterclaim and concluding that G.C. 2.2.11 was applicable.

The factual background of this case is similar to that presented in *Laurel Race Course, supra.* There, Laurel contracted with Regal Construction to rebuild the race track. Watkins was hired as the project engineer. The general conditions authorized Watkins to, among other things, 1) reject non-conforming work and materials, 2) interpret the meaning and requirements of the contract

documents, and 3) decide all disputes that might arise among the parties. The engineer was also given the responsibility of providing an opinion whether particular defects "would justify [Laurel] in withholding such ... payments." *Laurel Race Course*, 274 Md. at 144, 333 A.2d at 322. Due to defects in the clay and sand mixture used for the base of the track, Watkins recommended that final payment be withheld. Laurel refused to pay the sum of $110,931.91, an amount which was later reduced to $49,648 plus interest because Laurel had made additional payments. The trial court entered judgment for the entire balance claimed under the written contract, plus $12,724.01 for the work which Regal had allegedly performed pursuant to a verbal contract. On appeal, we modified the trial court's judgment stating, "no judgment should have been rendered against Laurel under the written contract." *Id.* 274 Md. at 154, 333 A.2d at 327.

█ We affirmed the general rule that "where payments under a contract are due only when the certificate of an architect or engineer is issued, production of the certificate becomes a condition precedent to liability of the owner for materials and labor in the absence of fraud or bad faith." *Id.* at 150, 333 A.2d at 325; *Chas. Burton Bldrs. v. L. & S. Constr.*, 260 Md. 66, 86, 271 A.2d 534, 544 (1970); 3A *Corbin on Contracts* § 650 (1960); *see also* 16 *Williston on Contracts* § 1922, at 417 (3d ed. 1976) ("When a certificate prepared by an architect or engineer is a condition precedent in a contract, the party for whom the work is being done generally promises to pay only when the supervising architect or engineer or other appropriate specialist or professional issues such certificate."). We further reasoned in *Laurel Race Course:* "It is fundamental that where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused." *Id.* 274 Md. at 154, 333 A.2d at 327; *Shoreham v. Randolph Hills*, 248 Md. 267, 276, 235 A.2d 735, 741–42 (1967);

*Barnes v. Euster,* 240 Md. 603, 606, 214 A.2d 807, 809–10 (1965); 6 *Corbin on Contracts* § 1252 (1962). Our holding in this case emphasizes other provisions not involved in *Laurel Race Course. See, e.g.,* G.C. 7.9.1. The condition precedent rule articulated in *Laurel Race Course* is not applicable where the architect's decision as to the amount of payment properly due is subject to review.

Here, the condition precedent to the owner's obligation to pay was not satisfied as the architect's issuance of a "Final Payment Certificate" was not performed. It was excused on the ground of a separate provision in the contract. *See* G.C. 9.6.1. The architect's decision as to the amount of final payment, however, was subject to the mandatory review provisions of G.C. 7.9.1 and 2.2.12. Therefore, the trial court erred in concluding that the architect's decision to withhold the entire contract amount owed was "final" and binding upon the parties. The fact that the architect had the initial authority to decline certification of payment and to determine damages is not in and of itself determinative of the issue regarding finality.

Under these circumstances, we rule that the trial judge committed reversible error in declining to alter the architect's decision as to damages arising out of the defective brickwork, and as to the amount properly withheld under the contract. The judge had clear, independent authority to conduct a *de novo* review of the architect's determination of damages. It follows that upon concluding that Borders "had not proven its measure of damages to the requisite level of certainty," it was erroneous for the trial court to enter judgment for Borders on the counterclaim in the amount of $144,097.88. This judgment was based solely on the agreed sum left to be paid under the contract. There was no correlation between this sum and the damages proven at trial. The circuit court's decision was inconsistent with the contract document. The court had an obligation to determine the proper set-off to be assessed against the contract amount owed. Under G.C. 9.6.1, the

architect was entitled to withhold only a reasonable and necessary amount to correct the artistic defect.

We shall remand the case with instructions to reinstate the interlocutory mechanics lien in favor of NSC for the total unpaid balance under the contract. *See* Md.Code (1974, 1988 Repl.Vol.), Real Property Article, § 9–106(b)(3). The trial judge should conduct further proceedings for a determination of the amount of set-off properly due. Because the judge incorrectly ruled that the architect had the sole authority to assess damages for the defective brickwork, the parties should have an opportunity to establish, through competent testimony, the amount of set-off properly due. The judge should then make a finding of damages under these circumstances and enter a final judgment in favor of the appropriate party.

The parties agree that the brickwork was defective as not conforming with contract specifications. It is the cost of correction, the amount of Borders' damages, which has never been properly determined by the lower court. We shall remand the case for such a determination.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.

CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND TO REMAND TO THE CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT, BORDERS.