*Gannett Fleming, Inc. v. Corman Construction, Inc.*, No. 2827, September Term 2018

Opinion by Kehoe, J.


**ALTERNATIVE DISPUTE RESOLUTION – PETITIONS TO COMPEL OR STAY ARBITRATION PROCEEDINGS – THE LIMITED ROLE OF THE COURT**

Courts confronted with petitions to compel or to stay arbitration are to consider one thing: Is there in existence an agreement to arbitrate the dispute sought to be arbitrated? But, depending upon the facts in a specific case, this one arbitrability or "existence" question can be multifaceted, requiring a court determine whether an agreement to arbitrate exists "in fact" and whether the controversy to be arbitrated falls within the substantive scope of a valid arbitration clause.


**ALTERNATIVE DISPUTE RESOLUTION – EXISTENCE OF AN AGREEMENT TO ARBITRATE "IN FACT"**

An agreement to arbitrate does not exist "in fact" if, applying basic state-law contract principles, a court finds no enforceable agreement to arbitrate ever existed. Similarly, an agreement to arbitrate may no longer exist "in fact" if a party, by subsequent act or omission, has waived a once-valid right to arbitration.


**ALTERNATIVE DISPUTE RESOLUTION – WAIVER OF RIGHT TO ARBITRATE**

There are two ways in which a court may find a right to arbitration is waived for inappropriate delay in asserting the right. First, a party may fail to make a demand for arbitration within the time limits spelled out in the text of the agreement itself. Second, even when the arbitration agreement sets no demand deadlines, a right to arbitration may be waived if the party waits too long to assert the right and instead engages itself substantially in the judicial forum.


**ALTERNATIVE DISPUTE RESOLUTION – EXISTENCE AND VALIDITY OF AGREEMENT – STATUTES OF LIMITATIONS**

Under Maryland law, a demand for arbitration is not "untimely"—i.e., the right to arbitrate a dispute is not waived—simply because the same claim, if brought in the judicial forum, would be time-barred by Maryland's three-year statute of limitations. Rather, the expiration of a statutory limitations period renders a demand for arbitration untimely only if the parties provide for this in the arbitration agreement itself.

Maryland's general statute of limitations, by its terms, applies only to "civil action[s] at law." And arbitration proceedings are not civil actions at law. Md. Code, Courts and Judicial Proceedings Article § 5-101.

**ALTERNATIVE DISPUTE RESOLUTION – EXISTENCE AND VALIDITY OF AGREEMENT – SUBSTANTIVE ARBITRABILITY**

Courts must find no arbitration agreement "exists" if the controversy sought to be arbitrated is not within the substantive scope of the arbitration clause of the contract. *Gold Coast Mall, Inc. v. Larmar Corp*., 298 Md. 96, 106 (1983); Md. Code, Courts and Judicial Proceedings Article § 3-208.

**ALTERNATIVE DISPUTE RESOLUTION – EXISTENCE AND VALIDITY OF AGREEMENT – DISPUTES AND MATTERS ARBITRABLE UNDER AGREEMENT**

Courts should grant a petition to stay arbitration on the grounds of substantive arbitrability only if the dispute clearly lies beyond the scope of the arbitration clause at issue. Otherwise, the dispute—including the threshold-arbitrability determination—should be handed over to the arbitrator.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2827

September Term, 2018

_____

GANNETT FLEMING, INC.

v.

CORMAN CONSTRUCTION, INC.

_____

Fader, C.J.,
Kehoe,
Berger,

JJ.

_____

Opinion by Kehoe, J.

_____

Filed: November 21, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This is an appeal from a judgment of the Circuit Court for Anne Arundel County that denied a petition to stay an arbitration proceeding governed by the Maryland Uniform Arbitration Act. Our opinion addresses two issues. The first appears to be a question of first impression in Maryland: whether, in the absence of waiver or a specific deadline imposed by contract, a party forfeits the right to demand arbitration if the demand is not made within the limitations period which would apply if the claim were brought in an action at law. The second is whether the dispute in this case is substantively arbitrable, that is, whether it falls within the scope of the arbitration provision in one of two agreements between the parties. Because we answer no to the first question and yes to the second, we will affirm the judgment of the circuit court.

## Background

### The Agreements

Gannett Fleming, Inc. is a civil engineering firm. Among other activities, Corman Construction, Inc. builds and repairs roads and bridges. In 2011, the two companies agreed to work together to prepare bids for several highway construction projects in North Carolina. To be qualified to submit bids to the North Carolina Department of Transportation ("NCDOT"), the companies formalized their commitment to work together in a written contract (the "Teaming Agreement"). Under the Teaming Agreement, signed November 7, 2011, Gannett Fleming agreed to provide quantity and pricing estimates for the building materials needed to complete the highway projects. Corman would act as the

team's general contractor, using Gannett Fleming's estimates to prepare the bids that it ultimately submitted.

The Teaming Agreement also set out what would happen if Corman's bids for the highway projects were successful:[1]

> In the event of contract award to Corman by NCDOT, the parties will enter into a subcontract agreement consistent with the terms of this Teaming Agreement, encompassing Gannett Fleming's proposed services, and consistent with [Corman's contract with NCDOT]. Such subcontract will also include ACG Document No. 420 "Standard Form of Agreement Between Design-Builder and Architect/Engineer for Design-Build Projects – as Modified by Corman" and is made a part hereof. Any such form will contain the requirement that Gannett Fleming is to provide professional liability insurance in an amount not less than $2,000,000 in aggregate for each separate contract and will cover errors and omissions arising out of the performance of, or failure to perform, professional services. If the parties are unable to mutually agree on the terms of a subcontract after good faith efforts, then neither party will have any obligation to the other.

> Pricing and scope furnished by Gannett Fleming at time of Bid are considered firm and are to be incorporated into the subcontract agreement subject to any post award changes directed or allowed by NCDOT and/or Corman.

Three other aspects of the Teaming Agreement are particularly relevant to the parties' appellate contentions.

---

[1] The agreements are inconsistent in how they refer to the parties—sometimes with acronyms, sometimes with generic terms (like "Engineer" and "Design-Builder") and sometimes with full names. For the convenience of the reader, we will substitute the parties' names for all inconsistent references, without brackets, when quoting from the agreements in this opinion. We have also reformatted the excerpts in the interest of legibility.

*First,* the Teaming Agreement provided that, if Corman's bid were not accepted by NCDOT, Gannett Fleming would receive as payment for its pre-bid services any stipend received from the department. This was promised to Gannett Fleming "[i]n recognition of the highly unusual effort required" in assisting with the bid preparation.

*Second*, the Teaming Agreement limited Gannett Fleming's liability for its provision of pre-bid services:

> Gannett Fleming's liability for engineering services provided during the proposal preparation phase will be limited to the amount of stipend actually received by Gannett Fleming pursuant to Paragraph 7 of this Teaming Agreement.

> This limitation of liability provision does not apply to work or services performed by either party after award of a contract to Corman by NCDOT and the subsequent execution of a subcontract between the parties.

*Third,* the Teaming Agreement did not contain a provision for arbitration of disputes between the companies.

Corman was a successful bidder and was awarded a contract to replace seven bridges and five culverts in North Carolina. In August 2012, Corman and Gannett Fleming entered into a subcontract agreement for the project (the "Design Subcontract"), as the Teaming Agreement required them to do. The Design Subcontract provided that it was to be governed by Maryland law and laid out the parties' duties as they worked together to complete the project. The relevant provisions are outlined below.

Article 3 of the subcontract agreement defined Gannett Fleming's post-bid responsibilities, including a provision for "Basic Services" (emphasis added):

3

3.2 BASIC SERVICES Gannett Fleming's Basic Services consist of a review of the Project information furnished by Corman and the provision of the Preliminary Design Documents, Design Development Documents, Construction Documents, *bidding or negotiation assistance*, Construction Phase Services, and other basic services as may be provided in this agreement. . . . These services shall be performed in accordance with the schedule established by the Design-Builder pursuant to Article 5. Any Basic Services provisions that are *not required under this Agreement* shall be stricken.

Next, the Design Subcontract designated as "not applicable" several subsections normally reserved for some of these basic services—including "Preliminary Design Documents" and "bidding and negotiation assistance." These pre-bid services were not required of Gannett Fleming under the Design Subcontract because they had already been performed under the terms of the Teaming Agreement.

Article 5 of the Design Subcontract provided that Gannett Fleming "shall provide the Services required by this Agreement at such reasonable times as will enable Corman to complete its work in accordance with the schedules established by the Design-Builder." It further stated (emphasis added):

5.1 DELAYS BY ENGINEER If the progress or completion of the Project is *delayed by reason of any negligent act, error or omission of Gannett Fleming*, Gannett Fleming shall compensate Corman for and indemnify it against costs, expenses, liabilities or damages which accrue as a result of such delay. . . .

Article 6.1 provided that Corman would compensate Gannett Fleming for all "Basic" and "Additional Services" provided. The stipulated fee of $1,236,703.16 covered both "Design" and "Post Design" services. Article 7.1.3 of the agreement also limited Gannett Fleming's potential liability to $5 million.

4

Finally, Article 9 of the Design Subcontract provided a mechanism for resolving disputes between Gannett Fleming and Corman (emphasis added):

> 9.1 INITIAL DISPUTE RESOLUTION If a dispute *arises out of or relates to this Agreement or its breach*, the parties shall endeavor to settle the dispute *first through direct discussions*. If the dispute cannot be settled through direct discussions, the parties shall endeavor to settle the dispute *by mediation* under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to the dispute resolution procedures contained in this agreement. Once a party files a request for mediation with the other party and with the American Arbitration Association, the parties agree to conclude such mediation within sixty (60) days of filing of the request. . . .
>
> \* \* \*
>
> 9.4 DISPUTE BETWEEN DESIGN-BUILDER AND ENGINEER . . . Any disputes not resolved by mediation shall be decided *by arbitration* under the Construction Industry Arbitration Rules of the American Arbitration Association.

## The Dispute

The parties' relationship began to sour when Corman came to believe that some of the pre-bid quantity estimates provided by Gannett Fleming were faulty.[2] According to Corman, Gannett Fleming's errors resulted in delays, cost overruns, and, ultimately, substantial financial losses. In March 2015, Corman invoked the three-phase dispute-

---

[2] The parties disagree as to exactly when Corman discovered the problem—or, at least, the extent of it. The timing of Corman's discovery of the problem might affect the viability of some of Corman's claims. But, as we will explain, Maryland's statute of limitations does not affect the *court's* arbitrability inquiry, and so resolving this dispute is a task for the arbitrator.

5

resolution procedure outlined in Article 9 of the Design Subcontract. Corman scheduled a meeting with Gannett Fleming to begin direct discussions to attempt to settle Corman's claim against Gannett Fleming.

In October 2016, while these direct discussions were still ongoing, Gannett Fleming and Corman entered into a tolling agreement. This allowed Corman to investigate claims against Gannett Fleming, "for loss, cost, expense, or damage, or any other matter, breach, act, error or omissions, arising from design information provided to Corman," and to seek a settlement "without regard to the time constraints that exist because of any future expiration of any applicable statute of limitations, to the extent the Tolled Claims are within the applicable statute of limitations." The companies agreed "not [to] file suit *or commence an arbitration proceeding*" until the tolling agreement expired on January 31, 2017 (emphasis added). The parties extended the tolling period three times.

While the tolling agreement was still in effect, the parties also engaged in mediation, as required by the terms of the Design Subcontract. Mediation proved unsuccessful, however, and on August 15, 2017, the day the third extension of the tolling agreement expired, Corman filed a demand for arbitration with the American Arbitration Association. The demand described the dispute to be arbitrated as a "[c]ontractual claim for additional

6

costs arising from respondent's breach of professional standard of care."[3]

## The Petition to Stay

In response to Corman's arbitration demand, Gannett Fleming filed in the circuit court a petition to stay arbitration, pursuant to Md. Code, § 3-208 of the Courts and Judicial Proceedings Article ("CJP"). Gannett Fleming presented two arguments to the circuit court. *First*, Gannett Fleming asserted that Corman had waived its right to arbitration because its demand for arbitration was made after Maryland's three-year statute of limitations[4] for filing negligence and breach-of-contract claims had expired. *Second*, Gannett Fleming argued that Corman's claim was not arbitrable because it did not "arise[] out of or relate[]

---

[3] The exact nature of Corman's claim is disputed by the parties. Gannett Fleming argues in its brief that the amount of damages Corman was seeking equaled the losses incurred as a result of the bad price estimates alone. Thus, per Gannett Fleming, the claim arises *solely* under the Teaming Agreement. Corman, in its brief, disputes such a limited focus: "At no point has Corman ever stated that the amount of damages Corman is due is *solely* attributable to GFI's pre-bid services. . . . Corman was clear that its claims relate to quantity [sic] overruns in the completed designs performed under the Design Agreement and for GFI's delays in completing its services under the Design Agreement." Before the circuit court, Corman Vice President Arthur Cox testified that the damages figure contained "field overhead" and "acceleration costs" incurred by Corman "as a result of delays in getting the project completed." Because resolving this disagreement would not affect our analysis, we will assume, *arguendo*, that Corman's claims are narrower in scope, premised solely on a breach of the Teaming Agreement.

[4] This statute, codified at CJP § 5-101, reads:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

7

to" the performance or breach of the Design Subcontract (which contained an arbitration provision), but rather under the Teaming Agreement (which did not).

After an evidentiary hearing, the circuit court denied Gannett Fleming's petition. Distinguishing between the timeliness of a demand for arbitration and the timeliness of the substantive claim to be arbitrated, the circuit court ruled that Corman's demand was not untimely made. And relying on this Court's opinion in *Griggs v. Evans*, 205 Md. App. 64 (2012), the court applied a "significant relationship" test to decide that the asserted claims fell within the scope of the design agreement's arbitration clause.

Contentions on Appeal

Gannett Fleming presents two issues to this Court, which we have reworded:

> 1. Was Corman's demand for arbitration barred because it was not brought within three years of the date that Corman discovered the alleged negligence giving rise to the claim?
>
> 2. Did the circuit court err when it concluded that the claim asserted by Corman fell within the substantive scope of the arbitration provision in the Design Subcontract?

Our answer to each of these questions is no. Corman's right to arbitration was not time-barred by the statute of limitations set forth in CJP § 5-101, even if its demand for arbitration was made more than three years after discovering Gannett Fleming's alleged negligence. And Corman's claim, even if just for extra material costs incurred as a result of Gannett Fleming's breach of the Teaming Agreement, falls within the substantive scope of the arbitration provision in the Design Subcontract.

8

**Analysis**

Through arbitration agreements, parties forgo the judicial forum otherwise available to settle their disputes and commit to resolve the matter privately. *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 103 (1983). By contract, they determine what is subject to arbitration—the substantive scope of the arbitration clause—and also define the procedural rules to be followed when a dispute arises. In Maryland, arbitration is considered a "favored" alternative method of dispute resolution, for it often saves time and money for both the parties and the courts. *Baltimore County Fraternal Order of Police Lodge No. 4 v. Baltimore County*, 429 Md. 533, 549 (2012) (quoting *Walther v. Sovereign Bank*, 386 Md. 412, 425 (2005)).

In keeping with the public policy favoring arbitration, the Maryland Uniform Arbitration Act, codified at CJP §§ 3-201–3-234, limits the role of the courts in dispute resolution when a valid arbitration agreement controls. *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 546 (1994). Until an arbitration is concluded, the jurisdiction of Maryland courts generally may be invoked only to determine, as a threshold matter, whether a dispute is in fact arbitrable. *Id.*[5] This arbitrability issue is brought before the courts through petitions to compel arbitration (when a party to an arbitration agreement

---

[5] Courts may also be called upon to appoint an arbitrator when the arbitration agreement does not provide for appointments. CJP § 3-211. A court's jurisdiction may also be invoked after an arbitration award is made, to confirm the award, CJP § 3-227, to vacate it, CJP § 3-224, or to correct or modify it, CJP § 3-223.

refuses to arbitrate), *see* CJP § 3-207(a) ("If a party to an arbitration agreement . . . refuses to arbitrate, the other party may file a petition with a court to order arbitration."), or by petitions to stay commenced or threatened arbitration proceedings, *see* CJP § 3-208(a) ("If a party denies existence of the arbitration agreement, he may petition a court to stay commenced or threatened arbitration proceedings.").

When confronted with a petition to compel or to stay arbitration, trial courts are to consider "but one thing—is there in existence an agreement to arbitrate the dispute sought to be arbitrated?" *Stauffer Construction Co. v. Board of Education of Montgomery County*, 54 Md. App. 658, 665 (1983); *cf.* CJP § 3-207(c) ("If the court determines that the agreement exists, it shall order arbitration. Otherwise it shall deny the petition."); CJP § 3-208(c) ("If the court determines that the existence of the arbitration agreement is in substantial and bona fide dispute, it shall try this issue promptly and order a stay if it finds for the petitioner. If the court finds for the adverse party, it shall order the parties to proceed with arbitration."). In granting or denying petitions to stay or compel arbitration, courts should not delve into the merits, bona fides or factual basis of the claim to be arbitrated. CJP § 3-210.[6]

---

[6] CJP § 3-210 reads:

An order for arbitration shall not be refused or an arbitration proceeding stayed:

(1) On the ground that the claim in issue lacks merit or bona fides; or

10

Writing for this Court in *Stauffer Construction*, Judge Wilner observed that the "seeming simplicity" of these statutory directives is "deceptive." 54 Md. App. at 665. Depending upon the facts in a specific case, a court's inquiry can be multifaceted. A dispute is not arbitrable, and arbitration proceedings should be stayed, "where no arbitration agreement exists, either *in fact* or because the controversy sought to be arbitrated is *not within the scope* of the arbitration clause of the contract." *Gold Coast Mall*, 298 Md. at 106 (quoting *Layne-Minnesota Co. v. Regents of the University of Minnesota*, 123 N.W.2d 371, 376 (Minn. 1963)) (emphasis added).

Gannett Fleming challenges the arbitrability of Corman's claim on both fronts, arguing that no agreement to arbitrate exists "in fact" because Corman waived its right to arbitrate by not timely filing its demand for arbitration, and that, even if the arbitration provision in the Design Subcontract is still enforceable, the dispute at issue falls outside of its substantive scope.

The role of appellate courts in these cases is well-settled. Generally, a trial court's finding that a dispute is subject to arbitration is a conclusion of law, subject to review *de novo* by this court. *Walther*, 386 Md. at 422. However, a trial court's finding that a party has waived his right to arbitrate a dispute can be more fact-bound. When the determination of waiver turns on a factual analysis, the trial court's findings will not be disturbed on

(2) Because a valid basis for the claim sought to be arbitrated has not been shown.

11

appeal unless it is clearly erroneous. *Cain v. Midland Funding, LLC*, 452 Md. 141, 150 (2017); *see also Abramson v. Wildman*, 184 Md. App. 189, 200 (2009). When the waiver determination is instead based on conclusions of law, however, it is reviewed afresh by the appellate court. *Cain*, 452 Md. at 150 (citing *Wholey v. Sears Roebuck*, 370 Md. 38, 48 (2002)).

A. Existence in Fact: Was Corman's Demand Timely?

Gannett Fleming's first argument for why this dispute is not arbitrable is that Corman's demand for arbitration was untimely. Gannett Fleming contends that, because Maryland's statute of limitations would have prevented Corman from bringing the same claim in a judicial forum, arbitration should be disallowed too. We are not persuaded. Gannett Fleming's argument is inconsistent with the plain language of CJP § 5-101 and misunderstands the way in which that statute interacts with the arbitration regime established by Maryland's Uniform Arbitration Act.

As is noted above, a dispute may be considered nonarbitrable because no arbitration agreement "exists . . . in fact." *Gold Coast Mall*, 298 Md. at 106 (cleaned up). This may be because, applying basic state-law contract principles, a court finds no enforceable agreement to arbitrate *ever* existed. *See Cheek v. United Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 147 (2003) ("The determination of whether there is an agreement to arbitrate, of course, depends on contract principles since arbitration is a matter of contract."). For example, a promise to submit disputes to arbitration may be unenforceable for lack of

12

consideration, *id.*, or because it is invalidated by a generally applicable contract defense, like fraud, duress or unconscionability. *Walther v. Sovereign Bank*, 386 Md. 412, 425–26 (2005) (citing *Doctor's Associates v. Casarotto*, 517 U.S. 681 (1996)).

Even if a valid agreement to arbitrate was once made, courts may also evaluate, under CJP § 3-208, the *continued* existence of the right to arbitrate. *Stauffer Construction Co. v. Board of Education of Montgomery County*, 54 Md. App. 658, 666 (1983). A party may, by a subsequent act or omission, waive its right to arbitration. *Id.* at 668. In this context, waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." *Cain v. Midland Funding, LLC*, 452 Md. 141, 161 (2017) (quoting *Hovnanian Land Investment Group, LLC v. Annapolis Towne Center at Parole, LLC*, 421 Md. 94, 122–23 (2011)). An intention inconsistent with enforcement of the right to arbitration should be clearly established and should not be inferred from equivocal acts or language. *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443, 449 (1982) (citing *BarGale Industries, Inc. v. Robert Realty Co.*, 275 Md. 638, 643–44 (1975)). If waived, the right to compel arbitration is "regarded as having been voluntarily relinquished and thus treated as though it had never existed." *Stauffer Construction*, 54 Md. App. at 668.

Failing to timely make a demand for arbitration is one way to waive the right. *Stauffer Construction*, 54 Md. App. at 666 ("[B]y failing to make a timely demand, the party had

13

waived his contractual right to resolve the dispute through arbitration.") (discussing *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.*, 274 Md. 307 (1975)); *see also Allstate Insurance Co. v. Stinebaugh*, 374 Md. 631, 646 (2003) ("[A]n inappropriate delay in demanding arbitration acts as a relinquishment of the contractual right to compel such a proceeding." (quoting *Town of Chesapeake Beach v. Pessoa Construction Co.*, 330 Md. 744 (1993)). It is for this reason that courts, not arbitrators, evaluate the timeliness of a demand for arbitration, "insofar as [this] 'requires a determination of whether an agreement to arbitrate still exists based on possible waiver[.]'" *The Redemptorists v. Coulthard Services, Inc.*, 145 Md. App. 116, 141 (2002) (quoting *Rosecroft Trotting & Pacing Ass'n v. Electronic Race Patrol, Inc.*, 69 Md. App. 405, 413 (1986)).

Maryland appellate decisions have identified two ways in which a court may find a right to arbitration is waived for "inappropriate delay" in asserting the right. First, a party may fail to make a demand for arbitration within the time limits spelled out in the text of the agreement itself. For example, in *Frederick Contractors v. Bel-Pre Medical Center*, the arbitration agreement provided:

> The demand for arbitration shall be made . . . within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

274 Md. at 311. Considering the issue "in the light of the language of the particular contract and the equities as they appear to the court," the Court of Appeals decided it was satisfied

14

that Bel Pre's demand was made within the reasonable time stipulated by the agreement. *Id.* at 314–15 (quoting *Sanford Construction Co. v. Rosenblatt*, 266 N.E.2d 267, 268 (Ohio Mun. 1970)). Similar timeliness inquiries, based on the terms of the arbitration agreements themselves, were made in *Gold Coast Mall*, 298 Md. 96 (evaluating demand timeliness under an arbitration provision requiring that the parties submit a dispute to arbitration after 60 days of deadlock), and *Sisters of Mercy v. Gaudreau, Inc.*, 47 Md. App. 372 (1980) (which we will discuss later in our analysis).

Second, even when the arbitration agreement sets no demand deadlines, a right to arbitration may be waived if the party waits too long to assert the right to arbitration and instead "engage[s] itself substantially in the judicial forum."[7] *The Redemptorists*, 145 Md. App. at 141. Because "a resort to litigation is inconsistent with an intent to arbitrate, . . . one who litigates an issue that otherwise would be subject to arbitration waives his right subsequently to arbitrate that issue." *Stauffer Construction*, 54 Md. App. at 667. The

---

[7] A party may waive its right to arbitrate in other ways. *See, e.g., Cain*, 452 Md. 141 (By filing a collection action in a court, a debt-collection agency waived its right to require arbitration of debtor's subsequent action seeking damages and related relief based on violations of Maryland consumer-protection laws); *Gold Coast Mall*, 298 Md. at 113–14 ("A party asserting a claim who sues instead of seeking arbitration is in essence refusing to arbitrate and is itself in default of the arbitration agreement."). *But see Harris v. Bridgford*, 153 Md. App. 193, 206 (2003) (holding that a lawyer's suit against a former client for unpaid fees, filed after client's unilateral withdrawal from agreed-to arbitration, was just one fact to be considered in a waiver analysis because "a per se rule is the antithesis of the proposition that a knowing and intentional waiver of arbitration is generally a question of fact and ordinarily turns on the factual circumstances of each case.").

question in these cases is essentially how long a defendant may let litigation go on before attempting to shove the dispute out of the judicial forum.

For example, in *RTKL Assocs. v. Four Villages Ltd. P'ship*, 95 Md. App. 135 (1993), this Court affirmed the trial court's determination that an architect and a contractor waived their right to arbitrate a dispute because they waited almost five years after claims were brought against them before seeking to compel arbitration. In the interim, they took advantage of discovery and other litigation vehicles unavailable in arbitration. Similarly, in *Commonwealth Equity Services v. Messick*, 152 Md. App. 381, 400 (2003), we affirmed a trial court's ruling that the defendant investment broker waived its right to arbitrate a dispute by waiting fifteen months after the lawsuit began before seeking to compel arbitration. The broker was engaged in discovery and motions practice in the meantime. By contrast, in *The Redemptorists*, 145 Md. App. at 143, we held that a cemetery-services provider's demand for arbitration, made six months after the lawsuit began, was not untimely. We held the delay was "understandable under the circumstances." *Id.* at 142. Most of the six-month period was spent clarifying the complaint's scope, to be sure the claims were covered by the arbitration provision at issue. This was "not inconsistent with enforcing the right to arbitrate once the full scope of the claims became known." *Id.* at 141–42.

Gannett Fleming suggests there is a third way for courts to find arbitration demands to be untimely, leading to a waiver of the right to arbitration. The company argues demands

16

for arbitration are untimely—apparently as a matter of law—if they are made beyond the three-year time limit set out in CJP § 5-101. For this proposition, Gannett Fleming relies upon *Sisters of Mercy*, 47 Md. App. 372. In that case, a religious order sought to compel arbitration with an architect for breach of a contract to design a retirement home. *Id.* at 373–74. The Sisters did not seek to compel arbitration until five years after they discovered a leak in the roof. *Id.* at 378–79. Because this demand fell outside the three-year window allowed by the statute of limitations, this Court held that the Sisters' claim was untimely, and their right to arbitration had been waived. *Id.*

Gannett Fleming argues the facts in the present case are "nearly identical" to those in *Sisters of Mercy*, and so the holding of that case should dictate the result here. But Gannett Fleming is wrong on this score. Our analysis in that case was based upon the fact that the contract between the Sisters and the architect *specifically provided* that a demand for arbitration had to be filed within the applicable limitations period. The arbitration provision in that case read:

> The demand [for arbitration] shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

*Id.* at 375. It was only because the parties to the arbitration agreement contracted for it that the statute of limitations barred the arbitration sought by the Sisters.

17

In the case before us, the agreement between Gannett Fleming and Corman does not contain a term that imposes any time limitation on the parties' ability to seek arbitration to resolve their disputes. This is also not a case in which Corman let litigation drag on only to assert, months or years later, a right to handle the dispute outside of court. Instead, Gannett Fleming simply argues that Corman's demand to arbitrate was untimely—that the company's right to arbitration was waived—because the same claims, pursuant to Maryland's statute of limitations, could not be brought before a court in a legal action. Gannett Fleming's argument is not persuasive.

In our view, the expiration of a statutory limitations period does not render a demand for arbitration untimely—and, thus, the right to arbitration waived—unless the parties provide for this in their arbitration agreement. This accords with the text of CJP § 5-101 when given its ordinary meaning, *see Town of Oxford v. Koste*, 204 Md. App 578, 585 (2012) (citing *Breslin v. Powell*, 421 Md. 266, 286 (2011)), and read to be consistent with the Maryland Rules, *see Schlick v. State*, 238 Md. App. 681, 691 (2018) (holding that, where possible, the Court "prefer[s] to harmonize rather than find inconsistency" between enactments of the judicial and legislative branches). On its face, CJP § 5-101 applies only to "civil action[s] at law." And arbitration proceedings are not civil actions at law. *See* Md. Rule 1-202(a) (defining "action" to mean "collectively all the steps by which a party seeks to enforce any right *in a court*" (emphasis added)); *see also* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 862 (3d ed. 2011) ("*[A]ction* denotes a mode of proceeding *in*

18

*court . . . .*" (emphasis added)). Additionally, no other Maryland statute makes CJP § 5-101 applicable to demands for arbitration.[8]

Our holding is also consistent with Maryland case law. As Judge Sally Adkins noted after a review of untimely-demand cases in *The Redemptorists*, no Maryland court has found a party to have waived a right to arbitration due *solely* to delay; by itself, delay in demanding arbitration is not an "intentional relinquishment" of the right to arbitrate claims. 145 Md. App. at 141. Were we to hold Corman's right to arbitrate its dispute with Gannett Fleming to be barred by the three-year statute of limitations, delay alone would decide this case. Maryland's waiver cases also make clear that "there is no 'bright-line' test for making waiver determinations." *Messick*, 152 Md. App. at 394 (quoting *The Redemptorists*, 145 Md. App. at 137). Rather, our courts engage with the facts of each case to decide whether the party seeking arbitration has intentionally and unequivocally waived that right. *BarGale Industries*, 275 Md. at 643–44. Finding a demand for arbitration untimely for

---

[8] By contrast, statutes in two other states expressly provide that statutes of limitations may bar an attempt to arbitrate a claim that could not be brought in court. *See* Ga. Code Ann. § 9-9-5(a) (West 2019) ("If a claim sought to be arbitrated would be barred by limitation of time had the claim sought to be arbitrated been asserted in court, a party may apply to the court to stay arbitration or to vacate the award. . . . The court has discretion in deciding whether to apply the bar."); N.Y. C.P.L.R. 7502(b) (McKinney 2019) ("If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court . . . ."). A similar provision in Delaware's Uniform Arbitration Act was repealed in 2009. 77 Del. Laws Ch. 8, § 3 (2009) (amending Del. Code Ann. tit. 10, § 5702(c) (West 2019)).

19

failure to satisfy the statute of limitations for civil actions at law would substitute fact-bound analysis with a bright-line rule.

Such a conclusion also accords with Maryland's public policy "favoring enforcement of agreements to arbitrate." *Stinebaugh*, 374 Md. 631, 641 (2003). By declining to extend the reach of the general statute of limitations to arbitration proceedings, we ensure that the arbitral forum remains one "created, controlled and administered according to the parties' agreement to arbitrate." *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, 21 Md. App. 307, 320 (1974), *modified on other grounds*, 274 Md. 307 (1975).

Finally, our holding aligns with the majority view of other jurisdictions that have considered whether, in the absence of a specific statutory directive, expiration of a general statute of limitations precludes arbitration. *See, e.g.*, *Carpenter v. Pomerantz*, 634 N.E.2d 587, 590 (Mass. App. Ct. 1994) ("As used in statutes of limitation, the word 'action' has been consistently construed to pertain to court proceedings."); *Har-Mar, Inc. v. Thorsen & Thorshov, Inc.*, 218 N.W.2d 751, 755 (Minn. 1974) ("Based upon the special nature of arbitration proceedings and both the statutory and common-law meaning of the term 'action,' we feel compelled to hold that [the statute of limitations] was not intended to bar arbitration of [the] fee dispute solely because such claim would be barred if asserted in an action in court."); *In re Cameron*, 370 S.E.2d 704 (N.C. Ct. App. 1988) ("[B]y its terms the limitations period . . . applies only to an 'action,' which is a 'judicial proceeding,' . . . and an arbitration is neither an 'action' nor a 'judicial proceeding,' but a non-judicial, out-

20

of-court proceeding which makes an action or judicial proceeding unnecessary."); *Broom v. Morgan Stanley DW Inc.*, 236 P.3d 182, 188 (Wash. 2010) ("[W]e . . . read the statutory language and our own precedent to conclude that arbitration is not an 'action' subject to state statutes of limitations in these circumstances.").[9, 10]

---

[9] In addition to the cases cited above, the following cases, compiled in Craig P. Miller, *The Enforceability and Applicability of a Statute of Limitations in Arbitration*, 32 Franchise L.J. 26, 29 n.47, 30 n.54 (Summer 2012), have held the same: *Skidmore, Owings & Merrill v. Connecticut General Life Insurance C*o., 197 A.2d 83, 87 (Conn. Super. Ct. 1963); *Lewiston Firefighters Ass'n v. City of Lewiston*, 354 A.2d 154, 167 (Me. 1976).

Outside the statute-of-limitations context, state courts have widely held arbitration proceedings are not civil "actions." *See, e.g.*, *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 93 Cal. Rptr. 3d 457, 465 (Ct. App. 2009); *Moore v. Omnicare, Inc.*, 118 P.3d 141, 153 (Idaho 2005); *Kent Cty. Deputy Sheriff's Ass'n v. Kent Cty. Sherriff*, 6161 N.W.2d 677, 683 (Mich. 2000).

[10] We also find unpersuasive for several reasons Gannett Fleming's contention that the parties' tolling agreement "expressly reflected the parties' mutual understanding that limitations applied to Corman's claims whether presented in a judicial arbitral forum, and that certain claims would be subject to litigation." First, the tolling agreement itself provided it should not be "construed as an admission or denial by any of the Parties as to the merits of any of the Tolled Claims or the merits of any defenses, including Timing Defenses, to any of the Tolled Claims."

Second, the broadly worded tolling allowed the parties to investigate the claim and work toward a settlement "without regard to the time constraints that exist because of any future expiration of any applicable statute of limitations, *to the extent the Tolled Claims are within the applicable statute of limitations*" (emphasis added). By its terms, the agreement barred the parties from commencing either litigation or arbitration proceedings until the agreement expired. It also tolled so-called "Timing Defenses," including "(1) any statute of limitations, (2) laches, and/or (3) any failure of Corman or [Gannett Fleming] to institute or commence litigation or other legal proceedings" (emphasis added). Such a tolling agreement would prove useful should any claim by Corman be found not substantively arbitrable. And if a claim were found substantively arbitrable, the agreement could be an important factor in an arbitrator's evaluation of the timeliness of the claim (as

21

## B. Substantive Arbitrability: Is Corman's Claim Within the Scope of the Arbitration Provision?

Gannett Fleming's second argument for nonarbitrability is that Corman's claim lies beyond the substantive scope drawn by the parties in drafting their arbitration agreement. The circuit court, says Gannett Fleming, reached the wrong result when it applied the "significant relationship" test from *Griggs v. Evans*, 205 Md. App. 64 (2012). Gannett Fleming argues that the circuit court's opinion erroneously blurred the two distinct contractual relationships created by the Teaming Agreement and the Design Subcontract. The claim, the company asserts, relates solely to the negligent provision of pre-bid services under the Teaming Agreement, which contains no arbitration provision. Gannett Fleming's argument is not consistent with Maryland law.

Even if a valid agreement to arbitrate has been formed and the right to arbitrate has not subsequently been waived, courts must still find that no arbitration agreement "exists" under CJP § 3-208 if "the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract." *Gold Coast Mall*, 298 Md. at 106 (cleaned up). Because of Maryland's public policy favoring the use of arbitration to resolve disputes, courts should resolve doubts about the scope of arbitrable issues in favor of arbitrability. *The Redemptorists*, 145 Md. App. at 150–51. But they must also respect "the contract nature of

---

opposed to the timeliness of the demand for arbitration). *Cf. Rosecroft Trotting & Pacing Ass'n*, 69 Md. App. at 413 (distinguishing between demand timeliness and timeliness of the underlying claim).

arbitration . . . , so as not to require a party to submit a dispute to arbitration that it has not agreed to arbitrate." *Id.*; *accord United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

The Court of Appeals has provided the analytical framework for resolving issues of substantive arbitrability in cases such as the one before us:

> [I]f an arbitration clause is clear, it is initially for the courts to determine whether the subject matter of a dispute falls within the scope of the arbitration clause. . . . [I]n determining whether a dispute falls within the scope of an arbitration clause, arbitration should be compelled if the arbitration clause is broad and does not expressly and specifically exclude the dispute. . . . [I]f an arbitration clause is unclear "as to whether the subject matter of the dispute falls within the scope of the arbitration agreement," the question of arbitrability ordinarily should be left to the arbitrator.

*Allstate Insurance Co. v. Stinebaugh*, 374 Md. 631, 643 (2003) (quoting *Gold Coast Mall*, 298 Md. at 104–07).

The upshot of these decisions is that courts should grant a petition to stay arbitration on the grounds of substantive arbitrability only if the dispute clearly lies beyond the scope of the arbitration clause at issue. Otherwise, the dispute—including the threshold-arbitrability determination—should be handed over to the arbitrator. *Cf. Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."); *Contract Construction, Inc. v. Power Technology Center Ltd. P'ship*, 100 Md. App. 173, 178–79 (1994) ("[I]t is only when the matter in dispute is

23

unequivocally outside the scope of the arbitration clause that a motion to compel arbitration may be denied and litigation be allowed to proceed."). This is because "[w]hether the party seeking arbitration is right or wrong is a question of contract application and interpretation . . . , and the court should not deprive the party seeking arbitration of the arbitrator's skilled judgment by attempting to resolve the ambiguity." *Gold Coast Mall*, 298 Md. at 107 (citation omitted).[11]

---

[11] In deciding that the dispute in this case was substantively arbitrable, the circuit court relied on the "significant relationship" test from *Griggs*, 205 Md. App. 64. This test is used to determine whether a broadly worded arbitration provision can be read to reach claims that arise out of a related agreement without an arbitration clause. Per the test, the language of a broad arbitration clause should be interpreted to "embrace[] every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988).

We believe that the analysis outlined in our opinion is the better approach. The arbitration provision in *Griggs* was governed by the Federal Arbitration Act and the analysis in the *Griggs* opinion was built around federal case law. 205 Md. App. at 74–75. The arbitration provision in our case, on the other hand, is governed by the Maryland Uniform Arbitration Act. This distinction might not matter in some contexts. In appropriate cases, Maryland courts may look to cases interpreting the Federal Arbitration Act when construing Maryland's own arbitration act. *Holmes v. Coverall N. Am., Inc.*, 336 Md. 534, 541 (1994). But it seems the *Griggs* significant-relationship analysis and the *Gold Coast Mall* framework differ in how they ultimately allocate arbitrability decisions.

The courts applying the significant-relationship test appear to be deciding the scope of broad arbitration clauses *for themselves*. *Cf. Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) ("[T]he broad arbitration clause . . . *rendered arbitrable* all disputes having a significant relationship to the consulting agreement regardless of whether those claims implicated the terms of the consulting agreement.") (emphasis added). *Gold Coast Mall*, on the other hand, provides that as long as the precise scope of a broad arbitration clause is "reasonably debatable," the arbitrability determination is best left to the arbitrator's "skilled judgment." *Gold Coast Mall*, 298 Md.

24

Here, it is true that the Teaming Agreement and Design Subcontract are separate contracts, imposing differing duties on the parties. The Design Subcontract did not bind Gannett Fleming to perform any additional pre-bid services; the default provisions for pre-bid services were determined "[n]ot [a]pplicable" (*i.e.*, they were "stricken" from the modified form agreement). But, on its face, the language of the provision extends beyond disputes "aris[ing] out of" the subcontract agreement, and includes disputes "relat[ing] to" the agreement or its breach. The arbitration clause in the Design Subcontract is broadly worded, leaving vague the precise bounds of its scope.

In evaluating the substantive scope of the arbitration provision *de novo*, we cannot agree with Gannett Fleming that a dispute about faulty pre-bid estimates—upon which the bid was based and which presumably played some role in NCDOT's decision to award the contract to Corman—is not "relate[d] to" the parties' agreement to work together to build bridges and culverts in North Carolina. Indeed, it appears to this Court that the faulty pricing estimates for the project are intricately and inextricably related to the performance of the Design Subcontract or its breach. The information provided by Gannett Fleming under the Teaming Agreement was used to price and schedule all post-bid activities under the Design Subcontract. Corman asserts that the information provided by Gannett Fleming

at 107 (cleaned up). Under *Gold Coast Mall*, the task of defining the scope of an ambiguous arbitration provision—"a question of contract application and interpretation"—is shifted to the arbitrator. *Id.*

25

was flawed and that those errors led to project delays and increased costs as the parties worked to perform under the Design Subcontract. The Design Subcontract obligated Corman to pay Gannett Fleming for *all* services rendered for this project. This would include the pre-bid services provided under the Teaming Agreement. Otherwise, those services would have gone uncompensated.

The agreements, each signed by both parties, contemplate each other and explicitly reference each other. As we see it, the Teaming Agreement was a foundational premise upon which the Design Subcontract was later crafted. It was step one of two for the overall project, making firm the pricing and scope of services to be provided by Gannett Fleming. The relatedness of the arbitration provision to Corman's claims is even stronger if, as Corman argues, the claims were also for damages that resulted from delays in completing the project—additional overhead and acceleration costs occasioned by Gannet Fleming's erroneous estimates. Article 5.1 of the Design Subcontract makes Gannett Fleming responsible for the costs of delays that result from "*any negligent act, error or omission* of [Gannett Fleming]" (emphasis added).

Although there may be room to disagree, we could not "sa[y] with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83. Because Corman's claim at least arguably falls within the broad scope of the arbitration clause in the Design Subcontract, whether the claim is substantively arbitrable is a "reasonably debatable" issue.

26

*Gold Coast Mall*, 298 Md. at 107 (quoting *Layne-Minnesota Co. v. Regents of the University of Minnesota*, 123 N.W.2d 371, 376 (Minn. 1963). The circuit court therefore correctly left the substantive-arbitrability determination to the arbitrator's judgment. This is the division of arbitrable and justiciable issues for which the parties bargained.

## Conclusion

When parties contract to resolve their disputes by arbitration, they severely limit the role of the courts. The arbitral forum is, within certain limits, "created, controlled and administered according to the parties' agreement to arbitrate." *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.*, 21 Md. App. 307, 320 (1974), *modified on other grounds*, 274 Md. 307 (1975). The parties may draw their arbitration provisions broadly or narrowly. They may impose greater or fewer procedural hurdles and, if they wish, place time limits on bringing a demand for arbitration.

Here, the parties, working together to secure and then complete a highway-construction project, opted for a broad arbitration clause and imposed no hard deadlines on bringing claims. Because the parties' agreement did not limit the period in which arbitration can be demanded, Corman's right to arbitrate the dispute was not barred by the statute of limitations. And because the scope of the arbitration agreement extends to all disputes relating to the Design Subcontract or its breach, and because "any doubt over arbitrability should be resolved in favor of arbitration," *Commonwealth Equity Services v. Messick*, 152 Md. App. 381, 394 (2003) (cleaned up), we cannot say the dispute is not arbitrable on

27

substantive grounds. For those reasons, the trial court correctly denied Gannett Fleming's petition to stay arbitration.

We note that our opinion does not definitively decide that this dispute is arbitrable. We leave this determination to the arbitrator's "skilled judgment." *Gold Coast Mall*, 298 Md. at 107. Additionally, the arbitrator may still decide that Corman's substantive claim is untimely, even if the demand for arbitration was not. As this Court explained in *Rosecroft Trotting & Pacing Ass'n*, 69 Md. App. at 413:

> [T]imeliness of a claim to arbitrate is not equivalent to timeliness of the substantive claim to be arbitrated. The former requires a determination of whether an agreement to arbitrate still exists based on possible waiver and is a proper issue for the court. The latter requires factual determinations as to . . . when these specific incidents occurred, and whether, based on the time of the occurrences, they may be the subject of arbitration. The resolution of such matters falls within the province of the arbitrator, and not the court.

Finally, the arbitrator may also decide, in its application and interpretation of the parties' agreement to arbitrate, that Corman's claim lies beyond the scope of the arbitration provision. In agreeing to a broad arbitration provision, the parties left the interpretation of any ambiguity in the provision's scope in the arbitrator's hands.

**THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IS AFFIRMED. APPELLANT TO PAY COSTS.**